I remember the first time I did it, and the judge yelled at me. I didn't know. They didn't teach me in law school that that was sacred ground. I was just in Judge Wilson's chambers yesterday to inform the court that it was a sacred Indian burial ground in the well and warriors mustn't tread on it. My name. Good afternoon. My name is Jack Carroll. I represent the petitioner and appellate Michael Wayne Seawright. And in this appeal and in this proceeding, Mr. Seawright is seeking to get. Merits review by this court by the Ninth Circuit of his claim six that he was denied due process of law by the trial courts evidentiary rulings in his second trial that precluded him from introducing various evidence concerning the culpability of the third party. There were statements by Catherine's husband, James, that inferentially might have proved that James committed the crime rather than see right. Correct. By Catherine's husband, James, that he admissions that. All right. There are admissions. Yes. Now, number one, James was an available witness. James, we're going to the actual merits of claim six. He was alive and subpoenable. Available. I don't know. He may have been. He may have. Well, I can't think of a reason he would not. Well, let me put it another way. Was there proof, predicate proof before the proffered admission of James that James was unavailable so that the hearsay statement would come in under the exception for statement against financial or criminal interest? I don't know, Your Honor, if he was available. I don't know. I didn't ask that. Oh, I'm sorry. Was there proof by the defense prior to proffer of the statement by James that he was unavailable? In other words, you can't prove a statement against present physical financial or criminal interest in California without predicate proof of unavailability of the witness. So if there was no proof that James was unavailable, an objection on the grounds of hearsay was properly sustained. Secondly, James was not a party to this action. So any admissions on his part would not be admissible as admissions of a party litigant. That is correct. Well, if both of those were true, what evidentiary error, much less constitutional error, did the court commit? In the second trial court. What did it do wrong? It sustained an objection to two hearsay that was offered on two exceptions to hearsay which don't apply. I'm missing something. Your Honor, I frankly was prepared to discuss the procedural aspects of this because the merits of point six I do not believe was before this court. Really? Yes, Your Honor. There are two issues for the certificate of appealability. But let me, the judge cited relevance grounds to preclude the evidence. I don't see anything in my petition regarding unavailability or the hearsay exceptions. Just forget everything I've said and you start your argument your way. I do apologize, Your Honor. I believe the evidence was admitted in the first trial fully over objections. We're talking about Mr. Seawright's second trial. The first trial, this evidence was admitted and the result of the first trial was a hung jury. On the second trial, the evidence was denied on relevance grounds, not on hearsay grounds as I understand it. All right, go ahead. Now the two issues framed by the certificate of appealability are whether the district court's dismissal with prejudice on the merits of appellant's 1998 habeas petition erroneously caused the dismissal of appellant's 2006 petition as successive. This is a very complex procedural case. The 1998 petition filed by the petitioner was responded to by the state, by the respondent who claimed in their response that the claims were not exhausted. The magistrate judge made a review of that, determined that the claims were exhausted, then went forward to adjudicate all the claims and denied them on the merits. The report and recommendation of the magistrate judge went to the district court who approved that. The report and recommendation really didn't go into the exhaustion issue. That went up on appeal on the claim six on the third party culpability evidence issue. And at that point, after the issue was fully briefed, I believe additional briefing was sought regarding whether or not claim six was exhausted. Then this court, judges Hug, Ferris, and Silverman, issued a ruling in 2002, finding that the claim indeed was not exhausted. Now if that were true, and I believe it is true, I think that was a correct ruling, then the district court should not have ruled on the merits of that claim. It should have sent the claim back or given the petitioner the option to either dismiss that claim or hold the claim and stay in abeyance to go back for exhaustion. Am I in error when I read 2254b2 to give the district court jurisdiction to deny C. Wright's petition on the merits, even though there's been no exhaustion? You are not in error in reading that, Your Honor. The district court did not base its ruling on 2254b2. So it had the authority to do so, had the jurisdiction to do so, and it did so. No, it didn't. It did not invoke b2. All right. It could. Perhaps it could have, but it only could have done so on a finding that the claim was absolutely without merit. It did not even raise a culpable claim. Now, this court issued a certificate of appealability on that claim and heard substantial briefing. Now, what case tells us that 2254b2 limits the jurisdiction of the court to dismiss an unexhausted claim unless it makes a finding that the claim is totally without any merit at all in contradiction to later action in the COA? Well, the cassette case. Now, I believe I know where Your Honor is going with this, which is health. I'm not going anywhere. I haven't even read cassette. Oh, okay. You're not going anywhere. You're going somewhere. That's fine. The cassette case says that. I wish I were to be somewhere. You're right. Rainbow, yeah. The cassette case that we cited makes that very clear. And it requires a finding that in order to exercise the jurisdiction which Congress gave the district court under 2254b2 to dismiss an unexhausted claim. It must also make a finding that the claim is so frivolous as not to allow reasonable jurors to think that it should be the subject of a certificate of appealability. I don't think that's the language. It would be that it does not state a culpable claim. My reference to the certificate of appealability. Well, now, getting back to the dossier of culpable claim. Yes. If the two rulings by the California trial court that this was inadmissible hearsay are accurate as a matter of California law, are you saying that the California hearsay rules that keep out this testimony are violations of due process? That can be a ruling, Your Honor. Just simply because a ruling of a trial court. I'm sorry to interrupt you. Go ahead. No. I mean, are you seriously suggesting that California's rules regarding what is hearsay, what is inadmissible hearsay and how admissible hearsay must be predicated on a finding of unavailability? Are you seriously saying that that is a due process violation? I'm saying, Your Honor, that the trial court did not use hearsay. One of just two instances. There were many instances of the sculpture of evidence. It used the relevance grounds in order to preclude that evidence. If it used the best evidence rule rather than relevance or hearsay, what does it matter as long as it was hearsay? And the court was right. I mean, you know, he might have flunked the bar exam on that issue, but it doesn't mean that his judgment was wrong. Your Honor, if we're going to go through all of the merits of the claim on claim six, the rule of law is that under clearly established federal law as determined by the Supreme Court, when a hearsay statement bears persuasive assurances of trustworthiness and is critical, critical to the defense, the exclusion of that statement constitutes due process. Now, whether or not Mr. Stroop was available or unavailable, I don't know. I don't know from the record up here. I do know. If you don't know, you can't prove that the court erred by finding him to be available. Your Honor, I would be happy to go through a lengthy trial transcript to determine that issue. But at this point, I can only go through what is in the record, and that is the habeas petition that I've left. I have no further questions. This is a remarkably complicated set of circumstances. And as best I can figure out, it was our court that may have gone astray in the previous decision. It's all fine until you get down to the tagline. Correct. And as I understand the proposition you're putting in front of us, the tagline should have said dismissed without prejudice or remanded for the dismissal without prejudice or something like that. And instead, the tagline says affirmed. So it never goes back to the district court until somebody knocks on the door again. My problem is that I don't know what we can do about that today. Is there something we can do about that today? That is a very good question, Your Honor. Did you diagram this case thoroughly? Did I diagram it, Your Honor? Yes. I certainly did. I didn't present it. I did diagram the procedural ins and outs of this case. It took me a long time to do that. It took me a long time to do it, too. And you just come to that dilemma. Well, I think the diagram... There was a mistake made. There was a mistake. Because that was the court's order, you know. This court's order of 2002, Your Honor? No, that was the district court's order. The district court definitely made a mistake. Made a mistake, yeah. And... And the case was... And the court was affirmed. And... And we're stuck with that. Are we stuck with it, Your Honor? Yeah, I think we are. I mean, you tell me how we're not stuck with it. Well, you can... The question is... What was actually said and held and found by this court in the 2002 order? It does say affirmed at the end. There is no basis within the order to justify an affirmance. The argument, first of all, starts with going through... In fact, this is an advocate case, and there are standards that must be met by a petitioner. And it says, additionally, state prisoner must exhaust federal claims. And it goes through a discussion of 2254b1a. And it appears that the Ninth Circuit panel believed that a failure to exhaust was grounds to deny a petition. That seems to be what they are saying. Well, as best I can... I've tried to figure out what could have happened. And, frankly, it's not hard to figure out what could have happened. It's speculation. But part of it is just the nature of the volume and how we're cranking some of these decisions out. And part of it is that at the time in question, I wouldn't have had much hope that there was any way that your client could go back to state court on anything that would be a timely basis. Because most of the decisions that you have to rely upon to suggest what the district court... you now argue the district court should have done didn't actually show up until years later. So there were a good number of petitioners whose petitions were swept out to sea because of timeliness problems at this time. And they're just... This is... This is 2002. 2002. 2002. Because the Supreme Court's subsequent decisions have not been made retroactive. And I've looked because this does seem to me, gee, this claim never did get adjudicated the way it should have been. And although I'm sort of skeptical as to the claim, I'm not there yet, so I'm not looking at that question, although my skepticism I have to acknowledge. But I really have trouble figuring out what can be done about it today. Because if what had, you say, should have happened, actually he would have wound up being too late to be able to get into federal court after he's exhausted. And how does the time get told? He's way over by the time... Well, I think equitable tolling. That's issue number two. Now, I understand that tolling doesn't occur when you're in front of a federal tribunal. But the fact is that the mistake was not caused by the petitioner. The mistake was made by the district court. And everything kind of fell like dominoes after that mistake occurred. If you look at the petitioner's conduct, there's nothing in it that he should have done something else. He was basically at the mercy of the errors and procedural missteps. Now, pretty clearly the district court's not supposed to be giving advice as to what to do. And at the time in question, the stay and abate or the stay and go exhaust procedure wasn't solidly in place. So it's hard to figure out exactly what would have happened at the time. I'm just not sure what it is that we can do about the fact that we've got a judgment and mandate that says affirmed because this panel doesn't have the authority to undo what the prior panel did. And if you can give me a way around that, I've got something to work with. But right now I don't. If the Ninth Circuit, excuse me, this court or this panel commits an error, the general relief would be a petition to re-hear. I take it there was not one at the time. No, there was not. I went back and looked at the docket and didn't find anything and didn't find any reference for a petition for cert, which wouldn't have gone any place. It really was a petition for re-hearing that should have been brought. It should have been brought. And it just wasn't picked up. But if you feel any better, I just checked the other day. In the Central District, I forget the exact number, there were over 2,000 habeas petitions, state habeas petitions filed. I think over, well, none was granted. None was granted. I checked San Francisco and they had about 700 or 800. They're trying to find out for me if anyone remembers one being granted. Was this a 2254 petition? Yes, state habeas. So the way things have worked out, the great writ is the great joke. It just provides work for attorneys, an opportunity for the Attorney General to make a big speech if one is granted every five years, chastising the federal courts for interfering with the state's business. And that's about what it comes to. And we have probably more magistrates now than we have district judges. That's their function is to go over all of these. And it keeps the Attorney General's office busy. What else can I say? I appreciate what you're saying. Look at the labyrinth you have to go through. Yes, exactly. I mean, we have the same thing in immigration laws. We have the same thing in complexity and other laws. But anyway, you should be happy because the tax benefits have been extended for two more years. Thank you, Your Honor, for attempting to make me feel better. We've spent hours and hours on this. This diagram goes on for pages. You can't detect what the problem is unless you diagram it. And it comes down, I think the lynching is, this court's ruling in 2002, which was clearly in error. It was wrong. It was procedurally wrong. I mean, the appropriate thing to do would have been to allow exhaustion. Mr. Seawright then went and exhausted and came back. And then it was ruled that it was a successive petition. And then he did an appeal from a second petition. Yes, he did, actually. There were two appeals. He filed a notice of appeal in a motion for COA. He filed an application for authorization to file a second or successive habeas corpus. He did that. And there was also a notice of appeal filed in the district court in a request for COA, which was denied. But that was turned into a request for COA automatically under the circuit's rules at the time. That's what caused the problem. There were two separate appeals. The first was what I just discussed with you. The second was Mr. Seawright, who had been in protective custody, didn't know what to do. He didn't think there had been an appeal filed. So he filed this, cobbled together this handwritten pro se document, which he filed a motion to proceed with the appeal or file a successive appeal. That was interpreted by the clerk of this court as a motion. And the clerk communicated with the petitioner saying, we have two things going on here. What's going on? He responded, I never filed a COA, which he didn't realize had been filed automatically. That was interpreted to mean he was withdrawing the appeal and was going forward on a motion for a leave to file a successive petition, which I don't think anyone who looks at that can say that's what that was. But that was what it was interpreted to be. And since the motion didn't raise any of these successive issues, it was denied. So let's hear from Mr. Seawright. May it please the court, David Glassman for the respondent. As you point out, Judge Clifton, there is a convoluted procedural history in this case. Worst law school exam I think I've ever seen. Well, that's at any rate, before I address the procedural path of the case, I want to get right to what is ultimately alleged here, which is that it is because of this confluence of events that this petitioner has somehow been denied access to a federal appellate court of a potentially meritorious claim. And that brings me, Judge Bea, to your observation about the merits of the case, understanding that we're not here to argue the merits per se. It is true, as you pointed out, Judge Bea, that this is not an admissible statement under state hearsay principles. And that has really not been seriously disputed in this case. It was inadmissible both for the reasons that you described and for an additional reason, and that is that it is not a declaration against interest, and penal interest at least, where the declarant, the alleged declarant, has been tried and acquitted of the underlying crime. So that would be an additional reason why it would not be a declaration against penal interest. However, it is not true, and it is not fair to say that by virtue of that exclusion, which was an exclusion that was recognized by every state and federal judge that has looked at this claim, and it's generally gotten about a paragraph worth of consideration. Namely, it was a blatantly inadmissible attempt. And furthermore, it is not James Stroop's statement that we're ultimately talking about, because Stroop denied the statement. He denied it in the first trial of his petitioner. It is the statement of a third party alleging that when Stroop says what he said was, I think someone killed my wife, the statement was, I think I killed my wife. At any rate, I don't want to diverge too deeply there, except to say that evidence that James Stroop was responsible for this death was presented in this trial. Evidence of his acquittal, evidence of his trial, therefore, evidence that he spoke to the manager shortly after the murder, evidence that there were scratch marks on it. This jury knew the petitioner's theory that Stroop, and not the petitioner, was involved in this murder. So one cannot say that he was denied a defense, or that evidence of a third party's responsibility was never presented to this jury. So that's the merits of the claim. And as to that claim, I think it is also not accurate to say that this claim was resolved on exhaustion grounds by the district court, and not on the merits. Or rather, I'm sorry, on the merits and not on exhaustion. What the district court literally said, and I can't blame anyone else for the imprecision of the briefs. I wrote this brief, but in preparing for the argument, I noticed what the district court said, which is what we had argued, is that no federal claim was presented in this case. Not merely because of an exclusive reliance on state law, but because this did not represent a federal due process claim in the first place. And that very precise, very concise evaluation of this claim went to the Ninth Circuit in 2002. And the Ninth Circuit, one final note about the district court's resolution. The district court there said, and I'm referring to excerpts at page 172, which is page 48 of the district court's report and recommendation. The district court there says, the state says there's no federal issue here, and that the resolution of the issue did not violate controlling federal law. And I'll quote just one sentence. Respondents are correct in both regards. The district court is resolving both the merits and the lack of a federal claim. It goes to the Ninth Circuit. The Ninth Circuit, in that brief order, indicates that the ruling is affirmed. Now, is it an odd combination of events? Well, let's consider what else potentially happens after that. First of all, as has been indicated. I agree with your learned friend's citation cassette as saying that 2254B2 does not allow the district court to make a ruling on an unexhausted claim unless it also states that the unexhausted claim not only does not present a federal claim but presents no colorable claim. Your Honor, if I would return, I would ask the court to again look at the same page of the excerpts, 172. The district court is clearly indicating there that no colorable claim is present. It doesn't use the word colorable claim. Correct. But it virtually summarily rejects the claim on the merits just as every other court did. And I think it is fair to expect that when the Ninth Circuit, when a panel of this court is looking at the same, you know, this came onto the district court as part of, I think, eight claims. It resulted in a 50-page opinion. It's a one-issue case in the Ninth Circuit. And the issue is I never objected on federal law. I never cited any federal provisions. I never argued due process. I never showed why the U.S. Supreme Court would decide somehow that my case was unconstitutional when a state court applied established hearsay rules. But nevertheless, you should, notwithstanding the ADPA, which was in effect, Teague v. Lane, Estelle v. Maguire, and all the exhaustion rules, you should grant me relief. And the court, whether advisably or not, said in the decision, this is an overall review of the district court's order, and the decision is affirmed. Now, was the court going beyond the failure to pursue the federal claim in state court? Maybe it wasn't. But the point I was about to make is that- Were you on this case initially? Your Honor, I believe my first involvement with the case was in the brief in this court in 2002 or 2001. That's correct. And I argued at that time that there was no federal claim here, not merely that the claim was unexhausted, that there is no federal claim here. And the court more specifically found no exhaustion. The point I was about to make is because we have- Well, you think that the court made a mistake then? Well, I think that if the court- I don't know, and I'm not trying to be- I'm trying to say if the court made a mistake, maybe you should have caught it. Well, the person that should have alleged it- there's stuff to allege, as this court knows, or people try it in virtually every case on both sides. This petitioner had an attorney. He had an experienced habeas corpus appellate attorney in that case. And if at that time- I certainly- you know, if you want a representation from me, Your Honor, I never looked at that memorandum disposition and said, Oh my, eight years from now, I'll exploit this chain of events in front of the Ninth Circuit. So I don't know. But if that was their interpretation, he had an opportunity to file a re-hearing petition or to contest the outcome of the case and the fact that he would be barred permanently, ostensibly, by dismissal with prejudice. And there was none. And when he came back, admittedly, I think as a pro per, several years later, he abandons his appeal. Now, he tells this panel that's not what he meant to do. When he says in a letter that's in the excerpts, I don't want a notice. I don't want a certificate of appealability. He meant something else. I have no idea what he meant, what he intended. I know what he asked for and what the court ruled. But my point is that if we go back to that unusual chain of events, and I'm almost done, in which the district court has resolved the claim on the merits. Yeah, they kind us. We're sitting here a long time. I understand, Your Honor. I'm barely hanging on. Yeah. Believe me, they speak for us out here as well. Yeah, well. All I'm going to say, finally. You've got a door close by. Is that once he had been turned down by this court, if one was as well, now, of course, he should have an opportunity to go back to exhaust, et cetera. We already know what the outcome of this claim would be because, in this unusual set of circumstances, it had already been rejected by the district court on the merits. It ain't going nowhere. You said the word, finally. Did you mean it? I'm sorry, Your Honor. A moment ago, you said, finally. That's right. So that was my final point, was that there's no reason to come back to a federal court when we know what the outcome has been already. Yeah. Thank you. With that, I thank the court for its time. That was less than water. Happy anniversary, Your Honor. I know where this is going. I just simply. It's difficult not to respond to statements that I believe are just misrepresentations of the law and the record. That's all right. So they're cited in my brief and petition certainly as federal law for this claim, strong federal law. It's the Holmes v. South Carolina, Crane v. Kentucky, and Shia v. Cambria. And certainly Mr. Seawright's letter, the Ninth Circuit said, did not say dismiss my appeal. It's in the record. You can read it. Other than that, the flight's a fancy. The issue is if you could see it for yourselves to help this situation. Is this what you primarily do, or state agents? No, Your Honor. I'm primarily focused on business litigation and real estate. I served in the Federal Public Defender's Office for two years in the Capitol Habeas Division. Where did you serve? Under Maria Stratton. Good for you. Who was one of your clerks. Speaks highly of you. I also was a partner with Ed Toll, who was one of your clerks. You are in my chalice, Your Honor. In your what? Chalice. That is a Kurt Vonnegut statement, concept. People that are sort of within your sphere that you never really know, but somehow affect you. Oh, okay. Well, you made a very excellent presentation and argument. We struggled with this a lot. And your presentation was very good, too. To give you both a triple A. I'll make it four stars. Thank you, Your Honor. Thank you very much. And the last matter is submitted and will now recess until 9 a.m. tomorrow morning. All cases are submitted? Huh? You have to say all cases are submitted. All cases are submitted. Put that down. Can you bring these in for me? Sure. Okay. We feel like we owe you hazardous duty pay or something. Oh, my. This is really cold in here. I'm trying to get my hair out. You'd think Judge Kaczynski would come into the room for something that gets so cold. He likes to crank it down.
judges: Pregerson, Clifton, Bea